## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DWAYNE COOK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.   15-cv-0070-MJR-SCW** |
| | ) | |
| **SUSAN KERR, and** | ) | |
| **LOUIS SHICKER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

In January 2015, Dwayne Cook filed a *pro se* complaint against a number of prison officials at the Robinson Correctional Center, alleging that they violated his rights during his time at the prison by not providing him a working wheelchair and by failing to treat injuries he sustained when he fell out of his wheelchair.   Cook's first complaint was threadbare and his second lacked a request for relief, so those two complaints were dismissed at threshold review.   His third complaint fared better, and the undersigned permitted Cook's deliberate indifference claims against Susan Kerr, the prison's health unit administrator, and Louis Shicker, the prison's medical director, through screening.

Kerr and Shicker have now moved for summary judgment, maintaining that Cook did not exhaust his prison remedies before filing suit.   Cook was given several opportunities to respond to the motion and was warned of the risks of not doing so, but despite those directives, Cook has still failed to file a response.   For the following reasons, the Court **GRANTS** Kerr and Shicker's motion for summary judgment.

BACKGROUND

Cook's second amended complaint (Doc. 14), the operative complaint in this case, alleges that Defendants Kerr and Shicker were deliberately indifferent to his serious medical needs.   As narrowed by the Court's threshold order (Doc. 16), Cook's amended complaint alleges that he was issued a used wheelchair at Robinson Correctional Center, but by July 19, 2014, several parts of the wheelchair were either worn or broken (Doc. 16, p. 3).   Cook notified Susan Kerr, the health care unit administrator at Robinson, and Kerr had an inmate repair the wheelchair for Cook (*Id*.).   Cook described the inmate repairman as "unqualified, untrained, and unsupervised" (Doc. 14, p. 4).   At the lunch the very next day after the repairs were made, Cook alleges that he leaned back in his chair and it collapsed, causing him to fall (Doc. 16, p. 3).   As a result, Cook suffered multiple injuries, including a concussion and pain in his right shoulder, neck, hip, and lower back (*Id*.).   Cook complains that he continues to suffer from dizziness, slurred speech, and headaches (*Id*.).   He says that he wrote a letter to Louis Shicker, the prison's medical director, and requested an MRI and CT scan, but Shicker indicated that Plaintiff was being seen by medical staff who indicated no need for imaging tests (*Id*.).

In response to Cook's amended complaint, Kerr and Shicker filed the pending motion for summary judgment (Docs. 39 and 40).   They argue that they are entitled to summary judgment on Cook's deliberate indifference claims because Cook failed to exhaust his remedies as to them.   Cook's complaint alleges that he filed three grievances related to his claims here—an emergency one on July 31, 2014, an emergency one on

August 18, 2014, and a non-emergency one on October 16, 2014.   He received responses to his first two grievances on October 2nd and 7th indicating that those grievances had been received by "inmate issues" (Doc. 14, p. 5).   Cook's complaint says that he never heard anything more about those grievances and that he tried to submit another one on October 16, 2014, but received "no response" to that one, too (Doc. 14, p. 5-6).

According to Kerr and Shicker, Cook's July 31, 2014 and August 18, 2014 grievances were received by the Illinois Administrative Review Board on August 8, 2014 and August 25, 2014, respectively (Doc. 40-1, p. 3-4, 5, 6, 11).   Cook's submissions to the Board did not contain a response from the prison's counselor, grievance officer, or chief administrative officer, so the Board instructed Cook to follow up (*Id*. at p. 6, 11).   The Board issued its follow-up order to Cook's July 31, 2014 grievance on October 2, 2014, and to the August 18, 2014 grievance on October 7, 2014 (*Id*.).   Robinson Correctional Center itself has no record of receiving the July 2014 or August 2014 grievance on or around the time that those grievances were dated by Cook.   (Doc. 40-2, p. 1-2).

A copy of the August 18, 2014 grievance, however, was attached to a third grievance Cook filed directly with the grievance officer at Robinson on October 16, 2014 (Doc. 40-2, p. 1-6; 40-3, p. 1-2).   Cook's October 2014 grievance complained that he asked his former counselor about the status of his August 18, 2014 emergency grievance but that the counselor would not speak with him (Doc. 40-2, p. 5).   Per the October 2014 grievance, Cook also spoke with his current counselor about his August 2014 emergency grievance, who told him there was no record of that emergency grievance (*Id*. at p. 6).

The grievance officer that ruled on the October 2014 grievance found no record of the August 2014 emergency grievance in the cumulative counseling summary or the grievance logs at Robinson (*Id*. at p. 4).   The grievance officer denied Cook's request to have his former counselor disciplined or have the August 2014 emergency grievance retroactively heard through the October 2014 grievance, noting that it was Cook's obligation to ensure that the August 2014 emergency grievance was sent directly to the chief administrative officer of Robinson by way of the prison's mail system, and that there was no evidence of wrongdoing on the counselor's part (*Id*.).   Robinson's warden concurred with that result (*Id*.), and the Administrative Review Board does not have a record of Cook's third grievance ever being appealed to the Board (Doc. 40-1, p. 5).

Cook has not filed a response to Kerr and Shicker's exhaustion motion.   The defendants filed that motion on January 19, 2016 (Docs. 39 and 40), and Cook's response was initially due on February 22, 2016.   Cook did not file a response by that deadline, but on February 23, 2016, the Court appointed counsel for him (Doc. 48).   In light of the appointment, the Court gave Cook additional time, up to and including April 27, 2016, in which to respond to the summary judgment motion (Doc. 59).   Appointed counsel asked for additional time to respond to the summary judgment motion and also sought leave to file an amended complaint, and both of those requests were granted (Docs. 61 and 62).   Counsel then asked for two more extensions of time to respond to the summary judgment motion and to file an amended complaint (Docs. 63-65).   Those requests, too, were granted, and Cook was given until June 1, 2016 in which to respond

to Kerr and Shicker's exhaustion motion (Doc. 66).   As of this date, Cook has not filed a response or an amended complaint, nor has he asked for more time to do so.

LEGAL STANDARDS

**A. The Prison Litigation Reform Act**

Lawsuits filed by inmates are governed by the Prison Litigation Reform Act, which states, in relevant part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a).**   The Seventh Circuit requires strict adherence to this exhaustion requirement, *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)**, meaning that a prisoner "must file complaints and appeals in the place, and at the time, the prison administrative rules require" before he can sue.   *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).**   If a prisoner fails to follow that process, "the prison authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted."   *Dole*, **438 F.3d at 809.**   All aspects of the administrative process that are available to a prisoner must be exhausted before a prisoner sues—an inmate can't file a complaint before he completes the process and then let that process finish while his suit is pending.   *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**

In *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008)**, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the

federal judge.   *Pavey* contemplates a hearing by the judge to allow discovery, hear testimony, and assess whether the inmate exhausted his remedies.   *See id*. **at 742.** Although the Seventh Circuit in *Pavey* suggested that a hearing would take place to determine whether the prisoner had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" where there are no disputed, material facts regarding exhaustion.   *Doss v. Gilkey*, **649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).**

### B.  Exhaustion Requirements Under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Department of Corrections' Grievance Procedures to properly exhaust his claims.   **20 ILL. ADMIN. CODE § 504.800** *et seq*.   For a non-emergency grievance, the procedures first require inmates to speak with their counselor about their complaint.   **20 ILL. ADMIN. CODE § 504.810(a).**   Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within sixty days of the incident.   *Id.*   The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.   The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 ILL. ADMIN. CODE § 504.810(a)(b).**   "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within

2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 ILL. ADMIN. CODE § 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Illinois Administrative Review Board. *See* **20 ILL. ADMIN. CODE § 504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 ILL. ADMIN. CODE § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 ILL. ADMIN. CODE § 504.850(f).**

The grievance procedures also allow an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer, who may determine "that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 ILL. ADMIN. CODE § 504.840(a).** If an inmate forwards the grievance to the Chief Administrative Officer as an emergency grievance, then the officer "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 ILL. ADMIN. CODE § 504.840(b).** Once the officer has informed the inmate of his decision, the inmate may appeal that decision to the Administrative Review Board on an expedited basis. **20 ILL. ADMIN. CODE § 504.850(g).**

ANALYSIS

The Court notes that Cook has not filed a response, so under the Court's Local Rules, the Court will deem the facts as presented by Defendants to be uncontroverted. *See* **SOUTHERN DISTRICT OF ILLINOIS LOCAL RULE 7.1(c);** *see also Smith v. Lamz,* **321 F.3d 680, 683 (7th Cir. 2003);** *Flynn v. Sandahl,* **58 F.3d 283, 288 (7th Cir. 1995).**

Based on the evidence presented by Kerr and Shicker and left undisputed by Cook, the Court finds that Cook did not properly exhaust his administrative remedies for any of his three grievances.   As to Cook's first grievance, Cook marked that one as an emergency and says that he "submitted" it on July 31, 2014.   The rub is that all of the evidence shows that Cook sent that grievance directly to the Illinois Administrative Review Board rather than tender it to Robinson's chief administrative officer first, as he was required to do by the Illinois administrative rules.   For one, there's no record that anyone at Robinson received the first grievance; the grievance appears nowhere in Plaintiff's counseling summary or the grievance logs.   Once more, the Board received the July 31, 2014 grievance on August 8, 2014.   It would have been borderline impossible for Cook to send the emergency grievance to Robinson's warden, receive a denial or allow enough time to pass for Cook to presume that Robinson's warden was ignoring it, and then send the emergency grievance to the Board for it to receive it in that timeframe—the only reasonable explanation for the Board's quick receipt was that Cook sent the grievance straight to the Board.   In addition, Cook says in his amended complaint that he received the first and only response to his initial grievance on October

7, 2014.  That response didn't come from anyone at Robinson but instead from the Board, yet another piece of evidence showing that the grievance's first and only stop was at the Board.  Putting the proverbial nail in the coffin, Cook seems to admit in his second emergency grievance that he sent the first emergency grievance directly to the Board, stating that he wrote "an emergency grievance to the Administrative Review Board over a month ago."  To exhaust, Cook must follow the process set forth by Illinois, *Pozo*, **286 F.3d at 1023**, and the undisputed facts here show that Cook didn't—he sent the first grievance straight to the Board rather than to Robinson's warden.

Cook's third, October 2014 non-emergency grievance has a similar flaw.  That grievance skipped his counselor and was sent straight to the grievance officer, but that failure wouldn't necessarily preclude exhaustion, as the grievance officer addressed the grievance on its merits.  *Ford*, **362 F.3d at 398.**  The problem with the October grievance, rather, was Cook's failure to appeal.  After the prison's grievance officer denied his October 2014 grievance, Cook asked Robinson's chief administrative officer to review the grievance.  That officer did, affirming the finding of the grievance officer, and there's nothing to indicate that Cook ever appealed that finding to the Administrative Review Board—the Board has no record of receiving anything from Cook on the third grievance, and Cook has offered nothing in response to Kerr and Shicker's motion for summary judgment to say that he sent it to the Board.  Illinois rules require an appeal for a grievance, and the undisputed facts here show that Cook didn't appeal.  His third grievance, then, must be deemed unexhausted.  *E.g., **Hudson v.***

*Corizon Med. Servs.*, 557 F. App'x 573, 575 (7th Cir. 2014); *Hoeft v. Wisher*, 181 F. App'x 549, 551 (7th Cir. 2006); *Dixon v. Page*, 291 F.3d 485, 488-89 (7th Cir. 2002).

That leaves Cook's second emergency grievance, and while it's a slightly closer call, the Court is still of the view that it was unexhausted, as it suffers from the same defect as Cook's first grievance.   Robinson's records show no receipt of that grievance by the facility's warden or anyone else, and the fact that the Board received it a scant seven days after it was dated leaves no real room for doubt that Cook sent the grievance straight to the Board.   Cementing things even further is Cook's statement in his amended complaint that he received his first and only response to that grievance on October 7, 2015, but that response came from the Review Board, a point that strongly suggests that the grievance's first and only stop was at the Board.   That evidence, left completely undisputed by Cook, is enough to show that Cook didn't tender the grievance to Robinson's warden before moving to the Board, as required by the Illinois administrative rules.   And that means that the second grievance wasn't exhausted.

To be sure, there are exceptions to the exhaustion requirement, and there is a hint in Cook's submissions that the second grievance might fall into one of those exceptions here.   An inmate's failure to follow the correct procedural path to exhaust his prison remedies can be forgiven if prison officials blocked his way, *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)**, and there is a suggestion in Cook's third grievance, which was attached to his operative complaint, that he gave his second emergency grievance to his counselor at some point and that the counselor did nothing with it.   The rub is that a

prisoner who wants to take advantage of an exception to exhaustion, like incapacitation or obstruction, bears the burden to assert the exception, ***Moore v. Feinerman*, 515 F. App'x 596, 598-99 (7th Cir. 2013)**, and thus must at least respond to an exhaustion motion with an obstruction-related argument to create the kind of disputed issue of fact that necessitates a hearing. ***See Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011).** Cook never filed any response to Kerr and Shicker's motion for summary judgment to raise the obstruction point, and that failure to offer anything in an area where Cook bore the burden means that he must lose. ***Hurst*, 634 F.3d at 412.** At the least, Cook needed to offer verified evidence or sworn testimony to tee up a disputed fact for obstruction, ***McSwain v. Schrubbe*, 382 F. App'x 500, 502-03 (7th Cir. 2010)**, and he didn't do that either. The suggestions in the third grievance don't go that far: the third grievance isn't verified or sworn, and either way it only says that Cook "filed" the second emergency grievance and that he "gave" it to the counselor at some unspecified point, without going so far as to say that Cook gave the second grievance to his counselor when he drafted it and that the counselor obstructed its delivery to the warden. Maybe Cook declined to submit an affidavit or other evidence on that front to avoid perjury or sanctions problems—it would be quite a tough pill for this Court to swallow that Cook gave the August 18, 2014 grievance to his counselor when he drafted it, that his counselor gave him the runaround on it, and that Cook then sent the emergency grievance to the Board, as the Board received the second grievance a mere seven days after it was dated. But either way, Cook didn't offer any sworn evidence on

obstruction, meaning that the argument must fail.   *E.g., Hurst*, **634 F.3d at 412;** *McSwain*, **382 F. App'x at 502-03;** *Owens v. Hinsley*, **635 F.3d 950, 954-55 (7th Cir. 2011).**[1]

Even if the Court fully credited the suggestions in Cook's third grievance as evidence and assumed that the mere presence of the third grievance in the record sufficed to tee up an obstruction argument, there still wasn't the kind of obstruction here that would excuse a failure to exhaust by Cook.   Obstruction exists only when a prisoner "follow[s] procedure" and was blocked by a prison official regardless of his diligent efforts, *Dole*, **438 F.3d at 811**, and Cook didn't follow all the rules here.   At best, the third grievance suggests that Cook involved his counselor in the second emergency grievance, but Illinois Administrative Code § 504.840 didn't permit him to do so—Cook was required to forward emergency grievances directly to Robinson's warden.   In addition, Cook was also invited by the Board to follow up with it concerning his second emergency grievance, and he failed to do that as well.   *E.g., Steiskal v. Lewitzke*, **553 F. App'x 611, 616 (7th Cir. 2014);** *Dole*, **438 F.3d at 811;** *Cannon v. Washington*, **418 F.3d 714, 719 (7th Cir. 2005).**   On these facts, the exhaustion-related problems for the second grievance are ultimately ones of Cook's own making, meaning that it was unexhausted.

---

[1] Cook's failure to contest exhaustion in this Court incidentally means that Cook likely can't challenge the undersigned's exhaustion ruling on appeal.   *E.g., Canady v. Davis*, **376 F. App'x 625, 626-27 (7th Cir. 2010);** *Mark v. Gustafson*, **286 F. App'x 309, 312-13 (7th Cir. 2008).**   Whether the Seventh Circuit would hold as much is up to that Court; the undersigned only flags the point as a warning to Cook, who may be assessed a strike by the Seventh Circuit under the Prison Litigation Reform Act if he files a frivolous appeal.

CONCLUSION

Defendants' motion for summary judgment (Doc. 39) is **GRANTED**, and Cook's complaint is **DISMISSED without prejudice** on failure to exhaust grounds.  The **CLERK** is **DIRECTED** to enter judgment consistent with this order.

**IT IS SO ORDERED.**

**DATED:**   **September 7, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**